IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| JULIA YEARWOOD, | : | |
| | : | |
| Plaintiff, | : | |
| vs. | : | |
| | : | |
| LEWIS HOLLOWAY, individually and in his capacity as Superintendent of the CLARK COUNTY SCHOOL SYSTEM; DAVID COLE, individually and in his capacity as an agent of the CLARK COUNTY BOARD OF EDUCATION; and JOHN DOES 1 THROUGH 20, individually and in their capacity as agents and employees of the CLARKE COUNTY SCHOOL SYSTEM, | : : : : : : : : : : : | 3:04-CV-023 (CAR) |
| | : | |
| Defendants. | : | |

*ORDER ON MOTION FOR SUMMARY JUDGMENT*

The present case arises from the non-renewal of Plaintiff Julia Yearwood's teaching contract with the Clarke County School System. Through this action, Plaintiff contends that her contract was unlawfully non-renewed in retaliation for her expression of speech protected by the First Amendment of the United States Constitution. She further contends that she was unlawfully deprived of her liberty and property interests as protected by the Due Process Clause of the Fourteenth Amendment, otherwise deprived of her right to free expression under the First Amendment, and subject to libelous and defamatory statements while working for the School System.

Currently before the Court is the motion for summary judgment [Doc. 14] filed by Defendants Lewis Holloway and David Cole (herein "Defendants").  Through this motion, Defendants argue that Plaintiff's claims are barred both procedurally and as a matter of law.  The Court, having considered the arguments of the parties, the evidence cited, and the relevant law, agrees whole heartedly with Defendants.  Plaintiff's claims are unsupported both in law and fact.  Defendants' present motion is hereby **GRANTED** in full.

### STANDARD OF REVIEW

Summary judgment must be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Johnson v. Clifton, 74 F.3d 1087, 1090 (11th Cir. 1996).  Only a genuine issue of material fact will defeat a properly supported motion for summary judgment.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  This means that summary judgment may be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict.  See id. at 249-52.  In reviewing a motion for summary judgment, the court must view the evidence and all justifiable inferences in the light most favorable to the nonmoving party, but the court may not make credibility determinations or weigh the evidence.  See id. at 254-55; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,

if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law. Celotex, 477 U.S. at 323 (internal quotation marks omitted). If the moving party discharges this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact (i.e., evidence that would support a jury verdict) or that the moving party is not entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(e); see also Celotex, 477 U.S. at 324-26. This evidence must consist of more than mere conclusory allegations or legal conclusions. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Ultimately, summary judgment must be entered where "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex, 477 U.S. at 323.

## UNDISPUTED FACTS

In the present motion, Defendants' statements of fact are uncontroverted.[1] This district's local rules clearly require the non-moving party to respond to each of the movant's material facts. See M.D. Ga. Local Rule 56. The rule likewise provides that all facts contained in the moving party's statement, which are not specifically controverted, "shall be deemed to have been admitted." Id. Defendants' statements of fact [Doc. 14, Ex. A & Doc. 15] are therefore deemed admitted.

Moreover, to the extent that Plaintiff has apparently attempted to present additional facts for consideration by this Court on summary judgment, she has failed to properly do

---

[1] Although Plaintiff references her "Objections to Defendants' Statement of Material Facts" in her response [Doc. 21] to Defendants' motion for summary judgment, no such document was ever filed with this Court.

so. Plaintiff has not cited any evidentiary support for the statement of facts in her brief. Again, this Court's local rules require that "[a]ll documents and other record materials relied upon by a party . . . opposing a motion for summary judgment shall be clearly identified for the court" and that "[w]here possible, dates, specific page numbers, and line numbers shall be given." Because Plaintiff failed to comply with this local rule, the Court finds that the material facts of this case are as follows:

At all times relevant to this action, Plaintiff Julia Yearwood was employed as a contract, non-tenured teacher with the Clarke County School District. She was hired for the 2001-2002 academic year to teach in the Clarke County Alternative Education Program (herein "CCAEP"). This program is provided for students transferred from their regular schools for disciplinary infractions; CCAEP is used as an alternative to expulsion or suspension of students.

From the beginning of the 2001-2002 school year, however, Plaintiff experienced problems managing her students. Plaintiff conceded her short-comings as a teacher in a letter dated in November 2001. She wrote:

> What makes me thing I am qualified to teach? I don't know. I am AD/HD, am on medication and have as many anger and depression issues as most of my students. I am easily distracted, have concentration problems and so while to some it seems that 'I work all the time' it is actually that everything TAKES me a long time. My handwriting is horrible, I have difficulty arriving at systems to help me organize. I **have to have** structure to succeed. . . . I have to fight against being impulsive, and am easily drawn into discussions/arguments with (anyone) students. I have to watch my language: I tend to speak and act without thinking . . . .
>
> My weakest areas - places where I need advice and feed back are: **managing the classroom - discipline**.
>     identifying behaviors to address . . . .
>     when to address transgressions
>     how to address them and assign appropriate consequences

>           being consistent and fair
>   **developing & maintaining an organized/purposeful reward system**
>           . . .
>   **monitoring a "whole class" while simultaneously trying to help others**
>           I tend to have "tunnel vision" - when I focus on one student, I tend to loose track of the others. . . .
>           My indecision is so obvious that the kids see it.  It is because I am still struggling with the hows and whens or whats – and I want to be fair – and I have trouble thinking on my feet. . . .
>
>   **prioritizing/executing tasks of teaching**
>           . . .
>   **personal presentation**
>           . . .

(Letter, November 2001, Doc. 14, attached to Ex. B) (emphasis in original).  It is further undisputed that, while teaching at the CCAEP, Plaintiff did require frequent assistance to maintain order in her class.

Plaintiff's weaknesses were, of course, recognized during formal evaluations of her classroom skills.  As part of the formal evaluation process, all non-tenured teachers are observed on three separate occasions during the academic year.  Dr. Cole, the CCAEP principal, first observed Plaintiff in her classroom in November of 2001.  As a result of this observation, Plaintiff received "needs improvement" marks in the areas of "monitoring student progress" and "appropriate physical setting of her classroom."  Plaintiff received similar marks in her third observation, conducted February 13, 2001, and in March of 2002, Plaintiff received an overall unsatisfactory performance evaluation for the 2001-2002 school year.

Plaintiff's short-comings as a teacher, however, were not merely limited to her poor skills in managing the classroom.  Plaintiff was also reported to have used poor judgment and to have acted unprofessionally in front of students. School officials learned that

Plaintiff had in fact used profanity in the presence of students. In September of 2001, less than a month into the new school year, Plaintiff was reported as having used the term "asshole" in front of students. Later in the year, Plaintiff was reported as having used the phrase "stupid ass ugly" before a group of students, and on another occasion, Plaintiff was reported to have said "God damned or something to that effect." Plaintiff was also accused of inappropriately discussing one student in front of another and discussing personal matters in front of a group of students.

Students additionally complained about Plaintiff's disciplinary tactics. On November 9, 2001, a student complained that Plaintiff broke her pencil and threw it in the trash can. A few days later, another student complained that Plaintiff destroyed his artwork, and in December of 2001 yet another student complained that Plaintiff was "taking our stuff and throwing it in the trash" and "putting her hands on us." Other students complained that Plaintiff grabbed and squeezed their hands in an inappropriate, but apparently disciplinary, manner. One student even complained that Plaintiff had hit her. School officials were further aware that Plaintiff improperly kept students in her class, preventing them from continuing to their next class, as a form of punishment and that she refused to sit with her students in the cafeteria as she was instructed to do.

In early 2002, a decision was made not to offer Plaintiff a teaching contract for the following year. At this time, Dr. Cole, the principal, met with Dr. Lewis Holloway, the school superintendent, to discuss his personal recommendation that Plaintiff's teaching contract not be renewed. On February 11, 2002, Dr. Cole notified Plaintiff of his recommendation to Dr. Holloway, and on February 28, 2002, Plaintiff was notified by letter that the Clarke County School District would indeed not be renewing her contract for the

2002-2003 school year. On March 1, 2002, Plaintiff responded by handwritten note and requested further explanation for her termination. Dr. Holloway replied by letter on March 6, 2002 and advised Plaintiff that her contract was not being renewed because of her "wilful neglect to [her] teaching duties; [her] incompetency; [her] insubordination; and for other good and sufficient reasons."

On April 9, 2004, more than two years after Plaintiff was notified of her contract non-renewal, she filed the present action in this Court alleging that Defendants had violated her rights to due process and as guaranteed by the First Amendment of the United States Constitution. Plaintiff further stated claims for defamation and libel against Defendants under Georgia law.

## DISCUSSION

Defendants now file the present motion arguing that Plaintiff's claims fail both procedurally and substantively. With respect to their procedural challenges, Defendants contend that Plaintiff's claims are barred both by (1) her failure to effect timely service of the complaint and summons on Defendants in this case and (2) the statute of limitations for the claims brought. The Court finds Defendants' service challenge unpersuasive. Any failure to timely serve Defendants is essentially moot at this point in the case. Defendants waived any objection to service by consenting to this Court's jurisdiction in their Answer [Doc. 3] and proceeding with this case without objection.[2] See Pardazi v. Cullman Medical

---

[2] The Court notes, however, that Plaintiff has also named a number of John Doe defendants, in their individual and official capacities, as parties to this case. Despite a full discovery period, the John Doe defendants have yet to be identified by Plaintiffs and have apparently not yet been properly served. At this procedural posture, the Court finds that any claims against the John Doe defendants are due to be **DISMISSED**. See Fed. R. Civ. P. 4(m); see also James v. Mazda Motor Corp., 222 F.3d 1323, 1324 (11th Cir. 2000). This dismissal will

Center, 896 F.2d 1313, 1317 (11th Cir. 1990) (explaining that a defendant waives his objection to insufficient service of process by failing to timely object thereto).

Defendants' statute of limitations challenge, however, is not without merit. Here, Plaintiff states claims for defamation and libel under Georgia state law and constitutional claims pursuant to 42 U.S.C. §1983. Georgia law is clear that actions for injuries to reputation must be brought within one year from the date of the alleged defamatory act, regardless of whether the plaintiff had knowledge of the act at the time of the occurrence. Cunningham v. John J. Harte Assoc., Inc., 158 Ga. App. 774, 282 S.E.2d 219 (1981); Brewer v. Schacht, 235 Ga. App. 313, 317, 509 S.E.2d 378, 383 (1998). On summary judgment, Plaintiff does not make any allegations or present any arguments with respect to her state-law claims.  Defendants assume that Plaintiff's defamation and libel claims arise out of a letter dated March 6, 2002 and her unfavorable annual performance dated March 25, 2002.  Obviously, the one-year statute of limitations on such claims would have run in March of 2003.  The present suit was not filed until April of 2004, and thus Plaintiff's state-law claims are in fact barred by the statute of limitations.  Summary judgment with respect to Plaintiff's state-law claims, Count II of her Complaint, is therefore **GRANTED** in favor of Defendants.

The statute of limitations most often applied in Georgia to constitutional claims brought pursuant to 42 U.S.C. §1983 is the State's two-year statute of limitations for personal injury actions.  See Lovett v. Ray, 327 F.3d 1181, 1182 (11th Cir. 2003);

---

technically be without prejudice.  Yet, even if the John Doe defendants are later identified, Plaintiff's claims against these defendants will likely be barred by the statute of limitations. See Wayne v. Jarvis, 197 F.3d 1098, 1102-03 (11th Cir. 1999) (citing Barrow v. Wethersfield Police Dept., 66 F.3d 466, 468 (2d 1995) ("John Doe pleading cannot be used to circumvent statutes of limitation . . . .")).

O.C.G.A. §9-3-33. As a general rule, in determining the applicable statute of limitations in §1983 actions, "[f]ederal courts apply their own forum State's statute of limitations for personal injury actions . . . ." Id. (quoting Uboh v. Reno, 141 F.3d 1000, 1002 (11th Cir. 1998)); see e.g., Alexander v. Fulton County, Ga., 207 F.3d 1303, 1345 (11th Cir. 2000) (applying two-year statute of limitations for §1983 claim arising out of alleged discriminatory employment action). State law accordingly determines the statute of limitations in these cases, but "[f]ederal law determines when the state of limitations begins to run." Lovett, 327 F.3d at 1182. Under federal law, "the statute of limitations does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." Id.

In this case, Defendants contend that Plaintiff's §1983 claim for retaliation is barred by the two-year statute of limitations. They show that Plaintiff was notified by letter that her contract would not be renewed on February 28, 2002. Thus, her claim would have to be brought by February 28, 2004 to be arguably within the statute of limitations period. Again, here, Plaintiff did not file the present action until April of 2004 – undisputedly more than two years from the date she learned of the non-renewal of her contract.

Defendants likewise contend that Plaintiff's due process and other First Amendment claims are barred by the two-year statute of limitations. In regard to these claims, Plaintiff alleges that Defendants (1) deprived her of her right to be free from injury in violation of the Due Process Clause when they exposed her to a foreseeable risk of injury at the hands of her students, (2) deprived her of a protected property interest in violation of the Due Process Clause when she was given an overall unsatisfactory performance evaluation in March of 2002, and (3) deprived her of her First Amendment right to free speech when her

name was blackened in response to complaints about the lax and incompetent operations at the CCAEP.  (See Pl. Response [Doc. 21] at 6).  Defendants contend, however, that all actions taken by Defendants, which may fall within these general allegations, occurred outside the limitations period, and Plaintiff provides no evidence that any of the actions taken by Defendants allegedly giving rise to such claims occurred within the two-year statute of limitations.

In fact, in her response to the present motion, Plaintiff effectively concedes that the application of the two-year statute of limitations to her §1983 claims is appropriate in this case, and she does not dispute Defendant's contention that all actions giving rise to her due process and general First Amendment claims are barred by the statute of limitations. Plaintiff only argues that her retaliation claim is timely because the statute of limitations for that claim did not begin to run until Plaintiff had exhausted all of her administrative remedies, which included her plea to the Board of Education on April 11, 2002.  Plaintiff, however, fails to cite any law which would support such an argument.

As stated above, a statute of limitations generally begins to run when the facts, which would support a cause of action, are apparent or should be apparent to a person with a reasonably prudent regard for his rights.  Thus, in public employment cases, claims are often found to accrue when an employment decision is made and communicated to the plaintiff.  See e.g., Delaware St. College v. Ricks, 449 U.S. 250, 258 (1980) (holding that non-tenured teacher's claim accrued at the time the employment decision was made and communicated to him); Anderson-Free v. Steptoe, 970 F. Supp. 945, 953 (M.D. Ala. 1997) (finding that §1983 cause of action based on school's refusal to renew non-tenured teacher's employment contract accrued on date she received notice of her non-renewal).

Accordingly, in this case, the Court finds that the statute of limitations began to accrue on Plaintiff's retaliation claim when she learned that her contract was being non-renewed for the following school year. Any person with a reasonably prudent regard for her rights would or should have recognized a cause of action at this point. Plaintiff's First Amendment retaliation claim is therefore barred because the relevant statute of limitations period had tolled prior to the time this suit was brought. Morever, because Plaintiff has failed to come forward with any evidence to suggest that her other §1983 claims were timely, the Court finds that those claims are similarly barred. Summary judgment is thus **GRANTED** as to Plaintiff's constitutional claims.

As an aside, this Court feels compelled to further acknowledge that, even if Plaintiff's constitutional claims were not procedurally barred, she has utterly failed to provide any factual or legal support for her claims, and they would accordingly fail on the merits.[3] Plaintiff has not cited any evidence which would support a finding that Plaintiff

---

[3]
>Plaintiff's brief in response to the present motion for summary judgment in fact leaves much to be desired. The brief filed on Plaintiff's behalf actually looks as though it could not have possibly been reviewed by Plaintiff's counsel prior to filing: an entire section of the brief appears to have gone mistakenly unfinished and gaps apparently left for dates to be filled-in later are still blank. More disturbing, however, is counsel's complete failure to cite appropriate law and fact in the brief. Plaintiff's counsel responded to Defendants' thirty-five page brief in less than nine pages, only four of which attempt to address any issues before the court. This short argument by Plaintiff's counsel is cursory at best and fails to acknowledge the large majority of Defendants' arguments on summary judgment. Plaintiff's counsel submitted this brief to the Court even despite this Court's grant of not one but two extensions of time to file the brief in response to summary judgment [See Docs. 18 & 20]. It appears as though Plaintiff's counsel's performance in this case has been consistently poor. Plaintiff's claims were filed outside of the statute of limitations, service was apparently not perfected within the relevant time period, and then an unprofessional brief was filed with this Court in response to Defendant's motion for summary judgment - notwithstanding two extensions of time to file said brief. This Court obviously expects a higher degree of advocacy

was unlawfully subjected to a risk of bodily injury at the hands of her students in violation of her rights protected by the Due Process Clause. Plaintiff has likewise failed to establish that she in fact possessed a protected property interest or how her unsatisfactory performance evaluation in March of 2002 deprived her of such an interest in violation of Due Process.  Significantly, Plaintiff has failed to point this Court to any evidence which would suggest that her low performance reviews and contract non-renewal were not in fact warranted given her undisputed short-comings as a teacher.  Plaintiff has additionally not shown how her right to free speech was *ever* inhibited while working at the CCAEP; Defendants show, in contrast, that Plaintiff was permitted to make as many as twenty-two complaints or comments regarding her views while working at the CCAEP and that the decision to non-renew Plaintiff's teaching contract was completely unrelated to the communications that she made in this respect.

Accordingly, and for the reasons discussed above, Defendants' motion for summary judgment is hereby **GRANTED** in full.  Plaintiff's claims against the John Doe defendants are further **DISMISSED** without prejudice pursuant to Fed. R. Civ. P. 4(m).

**SO ORDERED** this 11th day of August, 2005.

S/ C. Ashley Royal
C. ASHLEY ROYAL
United States District Judge

---

from those attorneys who seek to practice in federal court.  If Plaintiff's counsel cannot do better in the future, the Court respectfully requests that he refrain from federal practice, or at least practice in this Court.